**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**VIVEK SHAH**                                                                                    **PLAINTIFF**
Reg. #43205-424

V.                                    CASE NO. 2:15-CV-78 BSM/BD

**B. WOOTEN and**
**the UNITED STATES OF AMERICA**                                              **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.     Procedures for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Chief Judge Brian S. Miller.  A party to this suit may file written objections with the Clerk of Court within fourteen (14) days of filing of the Recommendation.  Objections must be specific and must include the factual or legal basis for the objection.

By not objecting, you may waive any right to appeal questions of fact.  And, if no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record.

**II.    Introduction**

Plaintiff Vivek Shah, an inmate formerly incarcerated in the Bureau of Prisons's ("BOP") Federal Correctional Institution - Forrest City ("FCI-FC"), filed this case without the help of a lawyer.  (Docket entry #1)  Mr. Shah complains that Defendant Wooten was deliberately indifferent to his medical needs and that the United States was negligent in providing him medical care while he was housed at FCI-FC.  He brings his

claims under *Bivens v. Six Unknon Agents of the Fed. Bureau of Narcotis*, 403 U.S. 388, 91 S.Ct. 1999 (1971) and the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*.

Defendants have moved for summary judgment. (#27) Mr. Shah has not responded to the motion, and the time for doing so has passed. For the reasons set forth below, Defendants' motion for summary judgment (#27) should be GRANTED.

**III. Undisputed Factual Background**

On October 11, 2013, Vivek Shah arrived at the FCCI-FC. During his intake screening process, Mr. Shah told FCI officials that he suffered from chronic back pain. (#28-3 at p.20)

Between October 2013 and May 2014, Mr. Shah submitted three inmate requests for medical care. On October 27, 2014, Mr. Shah requested that he be scheduled to have his teeth cleaned. (*Id*. at p.26) On November 19, 2013, Mr. Shah requested glasses. (*Id*. at p.28) And, on December 5, 2013, Mr. Shah requested various vaccinations. (*Id*. at p.30)

Defendant Wooten saw Mr. Shah in triage in Health Services on four occasions, October 29, 2013, July 24, 2013, September 16, 2014, and January 8, 2015. (#28-2 at p.2) During those encounters, Defendant Wooten placed him in the BOP's Electronic Medical Record scheduler. (#28-2 at pp.5-8)

In May 2014, Mr. Shah began submitting inmate requests for treatment of his back pain. On May 5, 2014, Mr. Shah was evaluated by the Health Services staff due to

complaints of back pain and lethargy. (#28-1 at p.32) Mr. Shah also requested a soft-shoe pass and eye glasses. (*Id*.) At that time, Mr. Shah denied any new injury to his back; his musculoskeletal exam was normal; he was able to sit and stand without difficulty or assistance; and he did not report any radicular pain or numbness. (*Id*. at pp.33-34) Mr. Shah was referred to the commissary for NSAIDs (nonsteriodal anti-inflammatory drugs) as needed for pain. (*Id*. at p.34) He did not qualify for an orthotic referral and no "soft shoes" were provided. (*Id*.)

On May 28, 2014, Mr. Shah submitted an inmate request for eyeglasses and access to the results of a blood test. (*Id*. at p.36) On June 2, 2014, Health Services staff responded to Mr. Shah's request and informed him that he was scheduled to be seen by an optometrist and the mid-level provider. (*Id*.)

On September 8, 2014, Mr. Shah was examined by Health Services staff for complaints of back pain and bilateral ear-ringing caused by a softball injury that had occurred in April 2014. (*Id*. at p.40) At that time, the results of his muscuskeletal exam were normal; his gait was normal; he was able to sit and stand without difficulty; and he was able to extend his legs without difficulty. (*Id*. at p.41) Health Services staff ordered an x-ray of Mr. Shah's lumbar and thoracic spine, as well as a hearing test. (*Id*. at pp.41-42) Health Services staff also provided Mr. Shah information regarding back exercises. (*Id*. at p.42) Mr. Shah again was referred to the commissary for NSAIDs, as needed for pain. (*Id*.)

On September 10, 2014, Mr. Shah submitted an inmate request form, asking permission for his mother to send him custom orthotics. (*Id*. at p.45) In response, Health Services staff advised Mr. Shah that he should direct his request to the administration at FCI-FC and that insoles could be purchased at the commissary. (*Id*.)

On October 14, 2014, Health Services staff examined Mr. Shah and scheduled him to be seen by a mid-level provider. (*Id*. at p.15) Mr. Shah also was provided an indigent form to review so that he could notify Health Services staff which over-the-counter medications he needed until he could be evaluated by the mid-level provider. (*Id*.)

On December 12, 2014, an advanced practice nurse (the mid-level provider) examined Mr. Shah for his complaints of back pain and gas. (*Id*. at pp.47-48) During her examination, she noted that Mr. Shah suffered from a mild limp, mild scoliosis, pes planus, and appeared to have asymmetric leg lengths. (*Id*. at p.49) She prescribed Mr. Shah 500 mg of Naproxen to be taken twice daily for pain, ordered an x-ray examination, as well as an orthotics consultation. (*Id*. at p.50) In addition, she provided Mr. Shah arch supports and a soft-shoe pass and recommended expediting Mr. Shah's optometry consultation. (*Id*. at pp.47, 50) During that encounter, Mr. Shah also requested gas-relief tablets. (*Id*. at p.48)

On January 7, 2015, a physician's assistant reviewed Mr. Shah's request for gas-relief tablets and other medications. (*Id*. at p.54) The physician's assistant approved Mr. Shah's request for lactase enzyme tablets based on Mr. Shah's indigent status. (*Id*.) On

January 23, 2015, Health Services staff noted that Mr. Shaw's request for lactase enzyme tablets had been approved, but had not yet been filled. (*Id*. at p.57) The mid-level provider specifically noted that she would send an email regarding the status of Mr. Shah's medicine. (*Id*.) On January 30, 2015, Mr. Shaw was told that he had been approved for lactase enzyme tablets. (*Id*. at p.59)

On February 4, 2015, a physician's assistant evaluated Mr. Shah for his complaints of back pain. (*Id*. at p.61) Mr. Shah reported some pain relief from Naproxen and denied any numbness or tingling in his lower extremities. (*Id*.) He did complain, however, that the arch supports and soft shoes had aggravated his foot pain. (*Id*.) During the visit, Ms. Wingo noted that Mr. Shah was not limping and he was able to flex and touch his toes without difficulty. (*Id*. at p.62) Mr. Shah asked Ms. Wingo about physical therapy, but she told him that physical therapy was not warranted. (*Id*.)

On February 5, 2015, an optometrist examined Mr. Shah and recommended full-time-wear glasses. (*Id*. at p.66) On the same date, the order for his glasses was placed. (*Id*. at p.67)

On February 13, 2015, Health Services staff refilled Mr. Shah's Naproxen and lactase enzyme prescriptions. (*Id*. at p.69)

On February 25, 2015, Mr. Shah requested a lower-bunk pass, which Ms. Wingo approved until Mr. Shah's x-ray results could be received. (*Id*. at p.71)

On February 27, 2015, APN Morehart told Mr. Shah that the Health Services Department at FCI-FC lacked the equipment for taking a leg-length x-ray. (*Id*. at p.74) For that reason, APN Morehart told Mr. Shah that his legs would be measured for prosthetics. (*Id*.)

On March 20, 2015, Health Services staff ordered a refill of Mr. Shah's Naproxen prescription. (*Id*. at p.79)

On April 10, 2015, x-rays were taken of Mr. Shah's back and feet. (*Id*. at p.82-86) No evidence of any injury or damage was noted. (*Id*.)

On June 5, 2015, Mr. Shah was transferred to FMC Lexington. (*Id*. at p.7)

IV.  **Discussion**

   A.  Standard

Summary judgment is proper when the facts important to the outcome of a lawsuit are not in dispute and the moving party is entitled to judgment without the need for a trial. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

   B.  Deliberate Indifference

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A prison official can be held liable for an eighth amendment

violation if he "knows of and disregards a serious medical need or a substantial risk to an inmate's health or safety." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). To state a claim for deliberate indifference, Mr. Shah must allege "that he suffered from an objectively serious medical need" and "that [Defendant Wooten] actually knew of but deliberately disregarded his serious medical need." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014). A medical condition is deemed "objectively serious" if the prisoner was diagnosed by a doctor or where the need for care is so obvious that a lay person would recognize the medical need. *Id*.

Mr. Shah must show "more than negligence, more even than gross negligence" to prevail on his deliberate-indifference claims. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Fourte*, 746 F.3d at 389). Instead, Mr. Shah must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). See also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness). Here, Mr. Shah has failed to present evidence for the

7

Court to conclude that Defendant Wooten was criminally reckless in providing him medical treatment.

Here, Mr. Shah primarily complains that Defendant Wooten delayed his medical appointments. The undisputed evidence shows that Defendant Wooten only examined Mr. Shah four times. Other than encountering Mr. Shah in triage on those four occasions and placing his name into the electronic scheduling system, Defendant Wooten was not responsible for Mr. Shah's medical treatment. (#28-2 at p.2) In fact, based on the undisputed evidence, Defendant Wooten was not responsible for actually scheduling Mr. Shah's appointments with the mid-level providers. (*Id.*)

Based on Mr. Shah's medical records, the Health Services staff either examined him or referred him to a mid-level provider for treatment each time he complained of pain. Although Mr. Shah clearly disagrees with the treatment provided, his disagreement does not make the Defendants' conduct a constitutional violation. *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118–19 (8th Cir. 2007) (an inmate's difference of opinion over issues of expert medical judgment or a course of treatment does not establish a constitutional violation).

Finally, Mr. Shah has failed to offer any evidence that he suffered any injury as a result of any delay in medical treatment. *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogated on other grounds by *Johnson v. Jones*, 515 U.S. 304 (1995), as recognized in *Reece*, 60 F.3d

at 492 (internal quotation marks omitted)) (a prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials "ignored an acute or escalating situation or that [these] delays adversely affected his prognosis.")  Based on the undisputed evidence, Mr. Shah's deliberate indifference claim against Defendant Wooten fails as  a matter of law.

    C.    Federal Tort Claim Act Claim

Mr. Shah is also pursuing a negligence claim against the United States under the Federal Tort Claims Act ("the Act").  Under the Act, the law of the state where the alleged tort occurred controls.  *Glorvigen v. Cirrus Design Corp.,* 581 F.3d 737, 743 (8th Cir. 2009).  The parties agree that the alleged medical negligence in this case occurred in Arkansas.

Mr. Shah alleges that employees of the FCI–FC negligently failed to treat his various gastrointestinal issues.  When a medical negligence claim involves a medical provider's failure to properly diagnose, assess, and manage care and treatment, the claim falls under Arkansas's Medical Malpractice Act.  *Dodd v. Sparks Regional Medical Center,* 90 Ark. App. 191, 198, 204 S.W.3d 579, 583 (2005).

Under Arkansas law, "when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge," a plaintiff has the burden of proving, by expert testimony, the applicable standard of care, the defendant's breach, and that defendant's breach proximately caused injury that would not otherwise have occurred.

See ARK. CODE ANN. § 16-114-206(a); but see also *Broussard v. St. Edward Mercy Health System, Inc.*, 2012 Ark. 14, 386 S.W.3d 385 (Ark. 2012) (holding that statute's requirement for expert medical testimony by medical provider in same specialty as defendant to be in violation of separation of powers).

As an initial matter, the Court notes that the issue of treatment of gastrointestinal needs is not a matter of common knowledge, so expert testimony is necessary to establish a breach of the applicable standard of care in this case. See *Gonzalez v. United States*, 2010 WL 4054246 (E.D. Ark. Oct. 15, 2010). In its motion for summary judgment, the government correctly argues that, because Mr. Shah has not retained a medical expert, he is not able to meet his burden to prove medical malpractice under Arkansas law. Mr. Shah's failure to provide expert testimony is fatal to his claim.

The United States attaches the declaration of Dr. Martin Tindel, Clinical Director at FCI-FC. (#28-3) Dr. Tindel testifies that the medical care provided to Mr. Shah at FCI-FC met the community's standard of care for health care treatment and that the medical staff at FCI-FC provided Mr. Shah with timely and substantial health care. (#38-3 at p.7)

Mr. Shah has failed to come forward with any evidence showing that he suffered any injury as a result of any deviation of the standard of care by the medical department at FCI-FC. As a result, the Court cannot conclude that the negligence alleged is a matter

within the jury's common knowledge or that any injury suffered was the result of malpractice on the part of the medical staff at FCI-FC.

## V.     Conclusion

The United States is entitled to judgment as a matter of law based on the undisputed evidence in the record. The Court recommends, therefore, that the Defendants' motion for summary judgment (#27) be GRANTED. Mr. Shah's claims should be DISMISSED, with prejudice.

DATED this 16th day of June, 2016.

_____
UNITED STATES MAGISTRATE JUDGE